# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# GREENEVILLE DIVISION

| | | |
|---|---|---|
| GREGORY WALLER, | ) | |
|     Petitioner, | ) | NOS. 2:07–CV-98 |
| | ) |         2:05-CR-68 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | | |

## MEMORANDUM OPINION AND ORDER

On May 3, 2007, Gregory Waller ("Waller" or "petitioner") filed a "Motion For Relief From A Judgment Of A Person In Federal Custody Pursuant To 28 U.S.C. § 2255," [Doc. 43]. After entering a plea of guilty pursuant to a negotiated plea agreement, Waller was convicted of possession of a firearm by a convicted felon in violation 18 U.S.C. § 922(g)(1) and possession with the intent to distribute 5 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). On April 17, 2006, petitioner was sentenced to concurrent terms of imprisonment of 188 months as to each count. No direct appeal was filed.

Waller raised two claims in his § 2255 motion: (1) counsel was ineffective for failing to recognize that he did not have the requisite prior convictions to be classified as an armed career criminal, and (2) counsel was ineffective in not filing an appeal as requested by the petitioner. On June 13, 2007, this Court summarily denied relief on the claim related to classification as an armed career criminal on the basis that Waller affirmatively admitted to three prior drug felonies and a prior felony conviction for a crime of violence at the time of his guilty plea, directed the clerk to serve the motion on the United States Attorney, and ordered the United States Attorney to respond to Waller's

motion with respect to his claim that his attorney did not file the requested notice of appeal, [Doc. 44]. The government responded on July 12, 2007, [Doc. 45], arguing that Waller had not alleged sufficient facts to demonstrate that he directed counsel to file a direct appeal and that counsel's actions were not deficient in view of Waller's appellate waiver in his plea agreement.

On May 27, 2008, while his § 2255 motion was pending, Waller filed a motion for reduction of sentence pursuant to 18 U.S.C. § 3582 based on the retroactive amendment of the sentencing guidelines related to cases involving crack cocaine, [Doc. 46]. Waller's motion for reduction of sentence was denied on May 13, 2009, [Doc. 49], and Waller's notice of appeal of that order was filed on June 5, 2009, [Doc. 52]. Waller's appeal of the Court's order denying his motion for reduction of sentence is currently pending in the Court of Appeals for the Sixth Circuit.

On October 19, 2009, counsel was appointed to represent Waller and an evidentiary hearing was scheduled for February 1, 2010, on Waller's remaining claim in his § 2255 motion, [Doc. 54]. That hearing was subsequently rescheduled for March 22, 2010. On January 12, 2010, the government filed a motion to dismiss the petitioner's § 2255 motion and attached the affidavit of Waller's trial counsel, [Doc. 57]. On February 22, 2010, Waller responded through counsel in opposition to the government's motion to dismiss, [Doc. 60]. The evidentiary hearing was held as scheduled on March 22, 2010. For the reasons which follow, the government's motion to dismiss will be GRANTED and Waller's § 2255 motion will be DENIED.

An initial matter of concern is whether this Court has jurisdiction to decide petitioner's § 2255 motion while he has an appeal pending in the Sixth Circuit. The timely filing of a notice of appeal divests a district court of jurisdiction to act on matters that properly would be

encompassed by the appeal. *United States v. Sanzo*, 831 F.2d 671, 672 (6th Cir. 1987). In addition, the "well established general rule is that, absent extraordinary circumstances, the district court should not consider § 2255 motions while a direct appeal is pending." *Smith v. United States*, 89 F.3d 835 (Table), 1996 WL 330864 at *1 (6th Cir. June 14, 1996) (quoting *United States v. Robinson*, 8 F.3d 398, 405 (7th Cir. 1993) (collecting cases)). This rule applies even to claims of ineffective assistance of counsel, which may not normally be heard on direct appeal. *Smith*, 1996 WL 330864 at *1 (citing *Robinson*, 8 F.3d at 405).

This Court concludes that it has jurisdiction to consider and decide Waller's § 2255 motion, despite the pending Sixth Circuit appeal. This is so for several reasons. First of all, the matter currently pending on appeal in the Sixth Circuit is a matter totally unrelated and collateral to the matters raised in the § 2255 motion. Secondly, because the remedy if Waller were to prevail on his claim that counsel was ineffective for failing to file a notice of appeal would be that he could file a belated direct appeal and because he seeks vacation of his sentence, it makes sense for this Court to rule on the § 2255 motion. If Waller were to prevail, that might in fact render moot the current appeal pending in the Sixth Circuit.

To establish a claim of ineffective assistance of counsel, the petitioner must prove that his counsel's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* analysis applies to claims that the attorney's deficient performance led to the forfeiture of a direct appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000). Prejudice is shown when there is a reasonable probability that, but for counsel's deficient performance, petitioner would have timely appealed. *Id.* at 483-84; *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998).

The Supreme Court in *Roe* refused to adopt a *per se* rule that would require an attorney to file an appeal unless specifically directed not to do so, but instead affirmed that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe*, 528 U.S. at 477; *see also Regalado v. United States*, 334 F.3d 520, 523-24 (6th Cir. 2003). Absent specific instructions to file an appeal, the relevant inquiry is "whether the attorney 'consulted' with the defendant about the benefits and drawbacks of bringing an appeal." *Regalado*, 334 F.3d at 525. When an attorney has consulted with the defendant, then "[c]ounsel performs in a professionally unreasonably manner only by failing to follow the defendant's express instructions with respect to the appeal." *Roe*, 528 U.S. at 478. If counsel has not consulted with the defendant, then the relevant inquiry becomes whether the failure to consult constituted deficient performance. Counsel's failure to consult is not necessarily professionally unreasonable. *Id.* at 480. A "constitutionally imposed duty to consult with the defendant about an appeal [arises] when there is reason to think either (1) that a rational defendant would want to appeal . . ., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*.

Although Waller claimed in his § 2255 motion that he had instructed his attorney to file a notice of appeal, his testimony at the March 22 evidentiary hearing was contrary to that. Waller offered no proof at the evidentiary hearing that he had asked his attorney to file a notice of appeal and complained only that his attorney did not ask him if he wanted to appeal. He testified that he attempted to call counsel about a week after his sentencing hearing to inform his attorney that he

wished to appeal. He acknowledged that he recalled that the Court had advised him of his appeal rights at the time of sentencing but also acknowledged that he had made no attempt to contact the Court about filing a notice of appeal. He further acknowledged that he was told by his attorney that he was giving up his right to appeal in his plea agreement and that he could not appeal his sentence.

Waller's attorney also testified at the evidentiary hearing. Tim Moore, an experienced attorney with the Federal Defender Services, outlined, based upon entries in his file, extensive consultation with the defendant about his case during the pendency of the action in this Court. He specifically discussed with Waller early in the process that Waller was likely to be subject to the armed career criminal provisions of 18 U.S.C. § 924(e) and as a result,, that Waller immediately decided to plead guilty, and that Waller was eager to cooperate with the government in hopes of having the government file a motion for downward departure. Moore concluded, based on extensive investigation, that there was no basis for a motion to suppress in the case. Moore testified that considerable research was done on the armed career criminal issue. Moore further testified that he thoroughly reviewed the appellate waivers contained in the plea agreement with Waller[1] and

---

[1] This is confirmed by the transcript of the change of plea colloguy conducted on November 14, 2005, when the following exchange occurred among the Court, the government attorney, and Waller:

> THE COURT: ALL RIGHT. MR. REEVES, HAS THE DEFENDANT WAIVED ANY APPEAL RIGHTS OR RIGHTS TO FILE A SECTION 2255 MOTION IN THIS PLEA AGREEMENT?
>
> MR. REEVES: YES, SIR, YOUR HONOR. THE DEFENDANT HAS WAIVED ALL RIGHTS TO FILE A DIRECT APPEAL OR MOTIONS OR PLEADINGS PURSUANT TO 28 U.S.C. SECTION 2255. THE DEFENDANT HAS ALSO WAIVED ALL RIGHTS TO APPEAL OR COLLATERALLY ATTACK THE PLEA OR SENTENCE IN THE INSTANT CASE.
>
> Q: ALL RIGHT. MR. WALLER, DO YOU UNDERSTAND THAT

specifically advised him that filing a notice of appeal would likely constitute a breach of the plea agreement.

Moore testified that Waller never asked him to file a notice of appeal and that his file did not reflect any phone call from Waller about filing a notice of appeal after sentencing. Moore further testified that if Waller had called the office and had spoken to a secretary and expressed his wish to have a notice of appeal filed, it would have been filed. Moore testified that he has no record whatsoever that Waller, at any time, ever called his office about filing a notice of appeal.

After sentencing, Moore's office sent a "case closing letter" to Waller, advising him of his right to appeal and advising him that he had ten days from the entry of the judgment (May 5,

---

> PURSUANT TO THE TERMS OF YOUR PLEA AGREEMENT WITH THE GOVERNMENT YOU HAVE EXPRESSLY WAIVED CERTAIN RIGHTS TO FILE A DIRECT APPEAL OR TO COLLATERALLY ATTACK YOUR PLEA OR YOUR SENTENCE PURSUANT TO THE UNITED STATES CODE, SECTION – – TITLE 28, UNITED STATES CODE, SECTION 2255, AS JUST STATED BY THE UNITED STATES ATTORNEY?
>
> A:   YEAH.
>
> Q:   HAVE YOU AND YOUR ATTORNEY DISCUSSED THIS WAIVER OF YOUR RIGHTS TO APPEAL AND YOUR RIGHT TO COLLATERALLY ATTACK YOUR PLEA OR YOUR SENTENCE IN THIS CASE?
>
> A:   YEAH.
>
> Q.   HAS MR. MOORE ANSWERED ALL THE QUESTIONS YOU MIGHT HAVE HAD ABOUT THAT WAIVER?
>
> A.   YEAH.

Tr. of Proc., Nov. 14, 2005, pp. 11-12, [Doc. 62].

2006) to file a notice of appeal. Moore's letter is dated April 25, 2006. The letter states, in part: "Though you have the legal right to file a notice of appeal, I must also tell you that I do not feel that you have any legal issues to raise on appeal. Unless you tell me otherwise, I will not be filing a notice of appeal." Waller testified that he could not recall ever having received Moore's letter.

It is clear from the record in this case that Waller never specifically asked his attorney to file a notice of appeal. The only evidence that Waller ever even made any attempt to notify his attorney of any desire to file a notice of appeal is Waller's own testimony that he called a secretary about a week after sentencing and told her that he wished to appeal. There is no other evidence, however, supporting Waller's testimony that he made such a call. In fact, the credible evidence in the case establishes otherwise. Moore, who kept meticulous records of his contact with the petitioner throughout the pendency of Waller's case, had no record that any phone call was ever received by his office and testified, without equivocation, that if Waller had requested that a notice of appeal be filed in a call to a secretary, then the notice of appeal would have been filed. The Court also finds credible Moore's conclusion that no such phone call was ever made because Waller clearly understood that the armed career criminal enhancement applied to his case and that his best hope to get a future reduction in sentence depended on his cooperation with the government. Waller completely understood that the filing of a notice of appeal would have been a breach of his plea agreement and would have diminished the possibility that he might in fact achieve a reduction in sentence through his cooperation.

Based on the evidence in the record, this Court also concludes that Moore's failure to further consult with the petitioner about an appeal was not professionally unreasonable and that

7

Moore had no reason to think either that Waller would want to appeal or that Waller did anything to reasonably demonstrate to counsel that he was interested in appealing. Waller had agreed to a waiver of any direct appeal of his conviction and/or the resulting sentence in his plea agreement except for some very limited circumstances and he indicated, under oath, at the change of plea hearing that he understood the appellate waivers and had fully discussed them with counsel. Under the circumstances of this case, where petitioner hoped to achieve a reduction in sentence through substantial assistance to the government, Moore would have had no reason to believe that Waller wanted to file a notice of appeal, or that a rational defendant in his position would have desired to file the notice of appeal. Furthermore, this Court clearly advised Waller of his right to file a notice of appeal and that the clerk would file the notice for him, if he desired. Waller made no request of the Court at the conclusion of his sentencing hearing and never made any attempt to contact the Clerk to request the filing of a notice of appeal. In addition to all that, Waller was notified by his attorney's letter of his right to file an appeal and was advised of the deadline for doing so. Waller never made any response to counsel's letter.

Since Waller has not proven that he gave any express instruction to Moore to file a notice of appeal, it is clear that counsel did not render ineffective assistance of counsel in this way. Even if petitioner were to somehow establish that counsel's advice did not constitute sufficient consultation to satisfy *Roe*, the failure to consult further was not, as noted above, unreasonable in this case. Waller, who clearly faced armed career criminal designation in this case received, by virtue of his plea agreement, a sentence only six months above the mandatory minimum sentence required by statute and, by his cooperation agreement, preserved his opportunity to achieve a future

downward departure based on substantial assistance. The record also establishes that Waller knowingly and voluntarily agreed to waive his right to appeal or collaterally attack his plea and sentence on all but some very limited grounds. Nothing in this record suggests that a reasonable attorney would think either that a rational defendant in petitioner's position would want to appeal or that petitioner had reasonably demonstrated that he was interested in appealing. As a result, Waller cannot demonstrate deficient performance by counsel in this matter.

Waller raises one further claim in his response to the government's motion to dismiss. He claims "that it was Brian Hackett, not Tim Moore, that reviewed the plea agreement with the petitioner." He alleges that Hackett, who is not a licensed attorney but rather an investigator employed by the Federal Defender Services, did not properly inform him of "the implications of 18 U.S.C. Section 924(e)(1) on his sentence nor that by signing the plea agreement with the government he would be waiving his right to appeal a sentence that was within the guideline range as calculated by the Court." *See* Doc. 60.

Aside from the obvious statute of limitations problem with this claim, it clearly fails on the merits. First, as noted above, Waller acknowledged under oath, at the change of plea colloquy, that he and his attorney had discussed the waiver and that "Mr. Moore had answered all the questions [he] might have had about the waiver." Tr. of Proc., Nov. 14, 2005, pp. 11-12 [Doc. 62]. Secondly, Waller's plea agreement referenced the potential penalties Waller might face if determined to be an armed career criminal, [Doc. 20, p. 2], and he acknowledged under oath at the change of plea colloquy that his "attorney explained to [him] all the terms and conditions" of his plea agreement, [Doc. 62, p. 5]. Furthermore, he was advised by the Court at the change of plea hearing of the potential penalties if he was determined to be a armed career criminal, [*Id.*, pp. 9-18].

9

Most importantly, Waller confirmed to the Court that he understood that it would be up to the Court to determine if he met "the prerequisites to be designated an armed career criminal" after a presentence report had been prepared by the United States Probation office. [*Id.* pp. 10-11].

Thus, even if the plea agreement was reviewed with Waller by Hackett rather than Moore, that is largely irrelevant. Waller confirmed under oath that Moore had also done so and he was advised of both the implications of § 924(e)(1) and his appellate waiver by the Court. Furthermore, Waller confirmed under oath on November 14, 2005, that he was satisfied with the way Moore had represented him. Even if Waller could prove deficient performance, he could not prove any prejudice.

So ordered.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE